UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FARAH MALIK, SHAD ANWER, MUHAMMAD AHMAD MANSOOR, KHADIJAH MANSOOR, SAHABIA MANSOOR and MUHAMMAD ESSA MANSOOR<br><br>A-79 PCSIR Society<br>KDA Scheme 33<br>Gulzar-E-Hiriji<br>Karachi, Pakistan 75330<br><br>Plaintiffs<br><br>Against<br><br><br>JAYNE A. HOWELL, Consul General at the U.S. Embassy in Islamabad,<br>c/o The Executive Office,<br>Office of the Legal Adviser, Suite 5.600,<br>600 191 Street NW.,<br>Washington DC 20522<br><br><br><br>Defendant | Case No.:<br><br>AMENDED COMPLAINT: |

## DESCRIPTION OF ACTION

1. This is an action brought by FARAH MALIK, SHAD ANWER, MUHAMMAD AHMAD MANSOOR, KHADIJAH MANSOOR, SAHABIA MANSOOR and MUHAMMAD ESSA MANSOOR (the plaintiffs) against JAYNE A. HOWELL, Consul General at the U.S. Embassy at Islamabad, Pakistan, to compel a decision on their applications for an immigrant visa, which have been unreasonably delayed.

## JURISDICTION

COMPLAINT - 1

2. This being a civil action against the United States arising under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 701 et seq., both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

## DESCRIPTION OF PARTIES

3. The plaintiffs are each citizens, nationals and residents of Pakistan, who are the principal and derivative beneficiaries of an immigrant visa petition to classify the principal, FARAH MALIK as a fourth family preference (sibling of a U.S. citizen) immigrant.

4. JAYNE A. HOWELL is the Consul General at the U.S. Embassy in Islamabad, Pakistan, who resides for official purposes in Pakistan. She is an officer or employee of the United States and the Department of State, with a duty to adjudicate the visa applications of residents of Pakistan.

## BRIEF STATEMENT OF RELEVANT FACTS

5. On January 25, 2007, Farah Malik's U.S. citizen sibling filed a petition to classify her as a fourth preference family-based immigrant, pursuant to 8 U.S.C. § 1153(a)(4).

6. This petition was approved on January 11, 2010.

7. The plaintiffs' visa applications were completed on approximately November 4, 2019.

8. The National Visa Center notified the plaintiffs that it had received all necessary documents from them and the USCIS on October 14, 2020.

9. Thereafter, despite multiple inquiries, no further information has been forthcoming regarding the status of their applications save that they are "awaiting an interview appointment".

## CAUSE OF ACTION

10. A consular officer 'must . . . properly and promptly' process a visa application, 22 C.F.R. § 1.106, and either 'issue' or 'refuse a completed visa application. Id. § 41.121(a)." Vulupala v. Barr, 438 F. Supp. 3d 93, 100 (D.D.C. 2020).

11. Further, she must do so in a reasonable time. 5 U.S.C. § 555(b).

12. It is the sense of Congress that the processing of an immigration benefit application should be completed no later than 180 days after the initial filing of the application. 8 U.S.C. § 1571(b).

13. Even a non-binding deadline may still be an "indication of the speed with which" Congress 'expects the agency to proceed.' Hulli, 549 F. Supp. 3d at 101 (quoting In re United Mine Workers, 190 F.3d at 549)." Ramirez v. Blinken, 594 F. Supp. 3d 76, 94 (D.D.C. 2022).

14. The duration of nearly three years which it has taken the U.S. Consul General at the U.S. Embassy in Islamabad to process plaintiffs' completed visa applications is unreasonable and well beyond the 180 days that it is the sense of Congress that such applications should be completed in.

15. In determining that the delay has been sufficiently egregious to warrant the remedy of mandamus, courts in this circuit consider the six-factor standard—the so-called "TRAC factors"—established in Telecomms. Research and Action Ctr. (TRAC) v. FCC, 750 F.2d 70, 79-80 (D.C. Cir. 1984). Those factors are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the

COMPLAINT - 3

       effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 79-80 (citations and internal quotation marks omitted)

16. Here the rule of reason is provided by the Department of State, which provides that it is its policy that a family-based immigrant visa must be processed no later than 60 days of the receipt of all necessary documents from the applicant and the USCIS. 9 FAM 504.7-2(b).

17. Since nearly three years have passed since the Department of State's receipt of all necessary documents from the applicant and the USCIS, the most important factor, the rule of reason, tips sharply in favor of plaintiffs.

18. The remaining factors either also tip sharply in favor of the plaintiffs or, at worst, are neutral.

19. Factor (2): Congress has provided an indication of the speed with which it expects the agency to proceed in the enabling statute, to wit, 8 U.S.C. § 1571(b), providing that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application.

20. Inasmuch as nearly four years have passed since the filing of their visa applications, factor (2) tips sharply in plaintiffs' favor.

21. Factor (3): The plaintiffs' welfare is very much at stake here in that Pakistan is a country racked by violent political repression, terrorism and religious intolerance, thereby constantly endangering their safety and mental well-being as long as they are forced to remain there.

22. The Executive Summary of the Department of State's 2021 HUMAN Rights Report for Pakistan reports that:

> Significant human rights issues included credible reports of: unlawful or arbitrary killings, including extrajudicial killings by the government or its agents; forced disappearance by the government or its agents; torture and cases of cruel, inhuman, or degrading treatment or punishment by the government or its agents; harsh and life-threatening prison conditions; arbitrary detention; political prisoners; politically motivated reprisal against individuals in another country, including killings, kidnappings, or violence; arbitrary or unlawful interference with privacy; support to the Taliban, a nonstate armed militant group that recruited and used child soldiers; serious restrictions on free expression and media, including violence against journalists, unjustified arrests and disappearances of journalists, censorship, and criminal defamation laws; serious restrictions on internet freedom including site blocking; substantial interference with the freedom of peaceful assembly and freedom of association, including overly restrictive laws for the operation of nongovernmental organizations and civil society organizations; severe restrictions of religious freedom; restrictions on freedom of movement; serious government corruption; lack of investigation of and accountability for gender-based violence; trafficking in persons; crimes involving violence or threats of violence targeting members of racial and ethnic minorities; crimes involving violence or threats of violence targeting lesbian, gay, bisexual, transgender, queer, or intersex persons; the existence or use of laws criminalizing consensual same-sex sexual conduct between adults; restrictions on workers' freedom of association; and use of the worst forms of child labor. There was a lack of government accountability, and abuses, including corruption, often went unpunished, fostering a culture of impunity among perpetrators, whether official or unofficial. Authorities seldom punished government officials for reported Human rights abuses or acts of corruption. Violence, abuse, and social and religious intolerance by militant organizations and other nonstate actors, both local and foreign, contributed to a culture of lawlessness. Terrorist violence and HUMA rights abuses by nonstate actors contributed to Human rights problems, with terrorist violence exceeding that of the prior year. Terrorist and cross-border militant attacks against civilians, soldiers, and police caused hundreds of casualties. Military, police, and law enforcement agencies continued to carry out significant campaigns against militant and terrorist groups. As of September 30, terrorism fatalities stood at 495, compared with 506 fatalities in all of 2020, according to the South Asia Terrorism Portal, a database compiled by the public interest advocacy organization Institute for Conflict Management, which collects statistics on terrorism and low intensity warfare in South Asia.

23. Further, the plaintiffs' health and welfare is also threatened by an extraordinary natural disaster. As official U.S. sources report:

> The summer 2022 floods in Pakistan created a humanitarian crisis and raised environmental and governance issues with implications for U.S. interests. In mid-June, at the beginning of monsoon season, heavy rains flooded areas of Pakistan. Estimates range from double to several times the normal monsoon rainfall. By late August, flooding had worsened to historic and catastrophic levels, reportedly affecting more than 33 million people, injuring nearly 13,000 and killing more than 1,700. More than one-third of the country was reportedly submerged at the height of the rainfall, negatively affecting housing, infrastructure, and livelihoods and creating extensive agricultural losses. In early October, floodwaters began to recede. Pakistan's government has estimated the cost of flood damage at $30 billion and cut its projected annual economic growth for its fiscal year ending June 2023. Islamabad reportedly will pursue the rescheduling of about $27 billion in external debt largely owed to China, and may seek to suspend international debt repayments. Winter could also pose further challenges for millions of flood-affected people

Congressional Research Service, "Pakistan's 2022 Floods and Implications for U.S. Interests", Updated October 28, 2022
https://crsreports.congress.gov/product/pdf/IF/IF12211 (last accessed February 3, 2023)

24. Finally, this visa delay has very much affected the plaintiffs' health and welfare in other ways as well.

25. The uncertainty of the plaintiffs' immigration status has forced them to delay important life decisions. For example, deciding whether to invest in a car or not, the children deciding to enroll in university, and determining the best educational path for the youngest daughter, Sahabia, have all become daunting challenges due to the unresolved visa situation.

26. Because of the extended waiting period, the minor plaintiffs were compelled to pursue their education in Pakistan rather than in the superior educational system of the U.S.

27. Additionally, the stress and anxiety induced by the visa application process have taken a toll on plaintiff Shad Anwer's health. His blood pressure began to escalate in 2021, and

COMPLAINT - 6

he is on medication to try and control his symptoms. The persistent worry and the protracted timeline of the visa process have exacerbated his health issues, leading to ongoing distress within the plaintiffs' family.

28. Factor (4): there does not appear to be any agency activities of a higher or competing priority which adjudicating the plaintiffs' applications would affect. Therefore, this factor is neutral.

29. Factor (5) tips sharply in favor of the plaintiffs.  The interest which is prejudiced by delay is not merely economic but goes to the most vital interests imaginable – the ability to live a decent life free from the horrors of political repression and terrorist violence, as well as devastating natural disasters.

30. Finally, Factor (6) is neutral.

31. Inasmuch as 4 of the TRAC factors, including the most important one, tip sharply towards the plaintiffs, while the remaining are neutral, therefore application of the TRAC factors here indicate that relief should be granted.

32. This Court has jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiffs. 28 U.S.C. § 1361.

33. Further, this Court shall compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

**RELIEF REQUESTED**

Wherefore it is respectfully requested that the Court compel defendant JAYNE A. HOWELL to grant or refuse an immigrant visa to each of the plaintiffs' forthwith.

Respectfully submitted October 17, 2023

/s/ *Michael E. Piston*

Michael E. Piston (MI 002)
Attorney for the Plaintiffs
38-08 Union St., Suite 9A
Flushing, NY 11354
Phone: 646-876-3772
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

COMPLAINT - 8